UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN BAKER and SHALLYN BAKER
as Personal Representatives of the Estate of
TREVOR BAKER,

      Plaintiffs,

v.

LONE STAR WHEEL COMPONENTS LLC and
CHAMPION HOME BUILDERS, INC.,

      Defendants.
_____/

CASE NO.:  8:24-cv-1510

JURY TRIAL DEMANDED

## AMENDED COMPLAINT

Plaintiffs, BRIAN BAKER and SHALLYN BAKER, as Co-Personal Representatives of the Estate of TREVOR BAKER ("Plaintiffs"), by and through the undersigned counsel, sue Defendants LONE STAR WHEEL COMPONENTS LLC ("Lone Star") and CHAMPION HOME BUILDERS, INC. ("Champion"), and allege:

### JURISDICTION

1. This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs and fees.

2. Plaintiffs Brian Baker and Shallyn Baker are natural people, personal representatives of the estate of Trevor Baker, parents of deceased Trevor Baker, and residents of 6310 Bayshore Road, Palmetto, Florida 34221-8429.

1

3. Lone Star is a Texas corporation with its principal place of business located at 3129 E. Highway 31, Corsicana, Texas 75110, which does business in the state of Florida.

4. Champion is a Michigan corporation with its principal place of business located at 755 W. Big Beaver Road, Troy, Michigan 48084, which does business in the state of Florida.

5. The parties are citizens of different states and 28 U.S.C. § 1367 and 28 U.S.C. § 1332 confers jurisdiction to this Court.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2). Defendants transact business within this District and a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated within this District.

7. Lone Star manufactures and remanufactures axles and wheel assemblies for the manufactured housing market. Lone Star sells these manufactured and remanufactured axles and wheel assemblies for profit within the state of Florida.

8. Champion builds manufactured, modular and mobile homes.

9. Champion regularly purchases axle and wheel assemblies from Lone Star and affixes those axle and wheel assemblies to the bottom of Champion's manufactured, modular and mobile homes for transport to their ultimate destination.

10. Champion sells these manufactured, modular and mobile homes and their affixed Lone Star axle and wheel assemblies for profit within the state of Florida.

## FACTUAL ALLEGATIONS

11. This action arises out of a motor vehicle crash that occurred in or about Tampa, Florida, on August 18, 2022. A motor vehicle fatally struck Trevor Baker while he attempted to repair a semi-

truck hauling a Champion built manufactured home with Lone Star axle and wheel assembly that was parked on the side of the road after the manufactured home's axle and wheel assembly failed during transit.

12. On August 18, 2022, Trevor Baker was driving a 1998 Peterbilt semi-truck and traveling on I-75, at or near the Bruce B. Downs ingress in Hillsborough County, Florida, transporting a part of a manufactured home built by Defendant Champion. A 2005 Kenworth semi-truck immediately following the Peterbilt semi-truck transported the other part of the manufactured home built by Defendant Champion. Pilot warning cars accompanied them in front of them and behind them.

13. At approximately 8:00 AM, on that date and at that place, the rear pilot car radioed a distress call, notifying Trevor Baker that the axle and wheel assembly on the part of the manufactured home hauled by the Kenworth was smoking profusely. At the time of the distress call, both semi-trucks were near the Bruce B. Downs ingress.

14. Both semi-trucks then pulled over as far right as practicable onto the shoulder of the Bruce B. Downs ingress, so that Trevor Baker could assess the problem with the smoking axle and wheel assembly on the part of the manufactured home hauled by the Kenworth.

15. At that same time, non-party Kyle Keenan was driving southbound on I-75 near that area.

16. Mr. Keenan changed lanes and struck a semi-truck driven by non-party Juan Carlos Garcia-Perez. The Keenan car proceeded to spin away toward the left side of southbound I-75 (where it struck another vehicle not involved in this case. This secondary collision has no bearing on this case).

17. At the same time, the Garia-Perez semi-truck moved to the right and rear ended a third vehicle to its right, driven by non-party Joseph Ltief.

18. This entanglement of vehicles then proceeded to strike and kill Trevor Baker, who was on the right side of southbound I-75, preparing to work on the smoking axle and wheel assembly on the manufactured home hauled by the Kenworth.

19. Plaintiff seeks redress for claims arising out of these assertions.

## COUNT I
## WRONGFUL DEATH-
## NEGLIGENCE AGAINST LONE STAR

20. Plaintiff realleges paragraphs 1-19 as if fully set forth herein.

21. Lone Star manufactured or remanufactured the axle and wheel assembly involved in this accident.

22. Lone Star designed and sold the axle and wheel assembly involved in this accident to Defendant Champion, who affixed the axle and wheel assembly onto the part of the manufactured home hauled by the Kenworth.

23. Lone Star had a duty to produce an axle and wheel assembly that was fit for its intended purpose of hauling manufactured homes and that would not fail when used as intended for its intended purpose. This duty included, but was not limited to, a duty to properly and adequately design, manufacture, assemble, test, inspect, label, and warn and instruct purchasers and end-users so as not to present a danger to persons who reasonably and expectedly would come into contact with the Lone Star axle and wheel assembly.

24. Lone Star breached this duty by negligently designing and/or producing a defective and unreasonably dangerous axle that failed when used as intended for its intended purpose while hauling a part of a manufactured home. Lone Star breached its duty to Plaintiff in one or more of the following ways:

    a. Designing the subject Lone Star axle and wheel assembly and component parts in such an unreasonably dangerous and

    defective manner as to permit the subject Lone Star axle and wheel assembly to fail when used as intended;

b. Failing to design the subject Lone Star axle and wheel assembly in such a way as to unreasonably restrict, limit, and/or prevent the failure of the subject axle and wheel assembly when used as intended, even in the event of inadequate maintenance;

c. Improperly assembling, inspecting, and testing the subject Lone Star axle and wheel assembly, including through use of prototypes in the design or manufacturing stages, to ensure that foreseeable use would not result in failure ;

d. Manufacturing the subject Lone Star axle and wheel assembly and component parts in such an unreasonably dangerous and defective manner as to permit the subject Lone Star axle and wheel assembly to fail when used as intended;

e. Failing to manufacture the subject Lone Star axle and wheel assembly in such a way as to to unreasonably restrict, limit, and/or prevent the failure of the subject axle and wheel assembly when used as intended, even in the event of inadequate maintenance;

f. Selling the subject Lone Star axle and wheel assembly and component parts without adequate warning of the unreasonably dangerous and defective nature of the subject Lone Star axle and wheel assembly that failed when used as intended;

g. Marketing, promoting, advertising, and representing to the general public that the subject Lone Star axle and wheel assembly was reasonably safe for use, operation, transportation, handling, movement, loading, and unloading when it knew or should have been known that the subject Lone Star axle and wheel assembly would fail when used as intended;

h. Marketing, promoting, advertising, and representing to the general public that the subject Lone Star axle and wheel assembly was reasonably safe for use, operation, transportation, handling, movement, loading, and unloading when a safer alternative design and/or means of manufacture was readily available and feasible, including but not limited to the use of more and/or better lubrication and/or more axle and wheel assemblies so that the axle and wheel assembly would fail when used as intended;

    i. Failing to properly design, manufacture, assemble, test, inspect, label, package, and otherwise place the subject Lone Star axle and wheel assembly on the market for sale in a defect-free condition, thereby creating an unreasonable danger of injury or death to users and bystanders under normal and foreseeable circumstances;

    j. Failing to warn, notice, and/or alert purchasers and users (or doing so inadequately) either before, during, and/or after the sale of the subject Lone Star axle and wheel assembly through reasonably informative and effective instructional materials, stickers, placards, and/or other documentation regarding hazardous conditions, including those described herein;

    k. Failing to instruct (or inadequately instructing) buyers, installers, inspectors, maintenance providers, contractors, and eventual owners or end users of the subject Lone Star axle and wheel assembly about proper use, operation, transportation, loading, and unloading of the same;

    l. Failing to inspect, test, review, or examine the subject Lone Star axle and wheel assembly, including all component parts, to ensure the subject Lone Star axle and wheel assembly would operate in a reasonably safe manner when the subject Lone Star axle and wheel assembly left Lone Star's possession; and/or

    m. Failing to use due care in the manufacture, design, marketing, distribution, sale, testing, or servicing of the subject Lone Star axle and wheel assembly, including its component parts, so that the subject Lone Star axle not reasonably safe for any use.

25. Lone Star's breach of its duty or duties as described above proximately caused and was a substantial contributing factor in Trevor Baker's death.

26. As a direct and proximate result of Defendant, Lone Star's negligence as alleged above, the Estate of TREVOR BAKER has incurred funeral and other expenses.

27. As a direct and proximate result of Defendant, Lone Star's negligence as alleged above, The ESTATE of TREVOR BAKER has sustained loss of prospective net accumulations, which were reasonably expected, but for the wrongful death.

28. BRIAN BAKER and SHALLYN BAKER, as Personal Representatives for the Estate of TREVOR BAKER and beneficiaries of the Estate of TREVOR BAKER are entitled to damages including, but not limited to:

   a. Loss of companionship and protection;

   b. Incurred funeral and other expenses;

   c. Loss of prospective net accumulations, which were reasonably expected, but for the wrongful death; and

   d. Mental pain and suffering.

WHEREFORE, Plaintiff demands judgment against Defendant, Lone Star, for all damages and relief afforded by Florida law, all costs, interest, pre-judgment interest, post-judgment interest, and Plaintiff further demands trial by jury on all issues so triable.

## COUNT II
## WRONGFUL DEATH-
## STRICT LIABILTY DEFECTIVE DESIGN AND MANUFACTURE
## AGAINST LONE STAR

29. Plaintiff realleges paragraphs 1-19 as if fully set forth herein.

30. Lone Star designed, manufactured and/or remanufactured the axle and wheel assembly involved in this accident.

31. The axle and wheel assembly involved in this accident that Lone Star designed and/or manufactured or remanufactured was defective due to design defects, manufacturing and/or remanufacturing defects, or both.

32. Lone Star sold the axle and wheel assembly involved in this accident to Defendant Champion, who affixed the axle and wheel assembly onto the part of the manufactured home hauled by the Kenworth.

7

33. Defendant, Lone Star is engaged in the business of designing, manufacturing, marketing, advertising, selling, and distributing axles and wheel assemblies, including the subject Lone Star axle and wheel assembly.

34. Lone Star sold the subject Lone Star axle and wheel assembly on the market, all while knowing the subject Lone Star axle and wheel assembly was reasonably likely to be used without inspection for defects and dangers by the end user.

35. Specifically, Lone Star knew or should have known that end users would not and could not properly inspect the subject Lone Star axle and wheel assembly for defects and dangerous conditions and that the detection of such defects and dangers would be beyond the capabilities of such persons.

36. Lone Star's axles and wheel assemblies, including the subject Lone Star axle and wheel assembly, were defective and unreasonably dangerous to end users and bystanders as of the time that Lone Star designed, manufactured, marketed, sold, and/or distributed the subject Lone Star axle and wheel assembly; at that same time, Lone Star knew or should have known that the subject Lone Star axle and wheel assembly was defective in one or more of the following ways:

   a. Designing the subject Lone Star axle and component parts in such an unreasonably dangerous and defective manner as to permit the subject Lone Star axle and wheel assembly to fail;

   b. Manufacturing the subject Lone Star axle and component parts in such an unreasonably dangerous and defective manner as to permit the subject Lone Star axle and wheel assembly to fail;

   c. Selling the subject Lone Star axle and component parts in such an unreasonably dangerous and defective manner as to permit the subject Lone Star axle and wheel assembly to fail;

   d. Making the subject Lone Star axle and component parts available to the general public, without adequate warning of the unreasonably dangerous and defective nature of the subject Lone

       Star axle permitting the subject Lone Star axle and wheel assembly to fail;

e. Marketing, promoting, advertising, and representing to the general public that the subject Lone Star axle was reasonably safe for use, operation, transportation, handling, movement, loading, and unloading when—in reality—basic and reasonably foreseeable use was known or should have been known to Lone Star to cause the subject Lone Star axle and wheel assembly to fail;

f. Marketing, promoting, advertising, and representing to the general public that the subject Lone Star axle and wheel assembly was reasonably safe for use, operation, transportation, handling, movement, loading, and unloading when—in reality—a safer alternative design was readily available and feasible, including but not limited to: using more lubrication and/or more axles to support the weight of manufactured homes;

g. Failing to design and manufacture the subject Lone Star axle in such a way as to restrict, limit, or prevent the possibility of burning up; even in the event of inadequate or non-existent maintenance;

h. Improperly assembling, inspecting, and testing the subject Lone Star axle—including through use of prototypes in the design or manufacturing stages—such that foreseeable use would not result in sudden, unexpected failure;

i. Failing to properly design, manufacture, assemble, test, inspect, label, package, and otherwise place the subject Lone Star axle and wheel assembly on the market for sale in a defect-free condition, thereby creating an unreasonable danger of injury or death to users and bystanders under normal and foreseeable circumstances;

j. Failing to inspect, test, review, or examine the subject Lone Star axle and wheel assembly (including all component parts) to ensure the subject Lone Star axle and wheel assembly would operate in a reasonably safe manner when the subject Lone Star axle and wheel assembly left Lone Star's possession; and/or

k. Failing to use due care in the manufacture, design, marketing, distribution, sale, testing, or servicing of the subject Lone Star axle and wheel assembly, including its component parts, in such

      a way to render the subject Lone Star axle and wheel assembly not reasonably safe for any use.

37. On August 18, 2022, the subject Lone Star axle and wheel assembly remained substantially unchanged from its condition when Lone Star axle sold the axle and wheel assembly to Champion.

38. For the reasons set forth herein, the subject Lone Star axle and wheel assembly was unreasonably dangerous to foreseeable users and bystanders, including Plaintiff.

39. Lone Star's defective and unreasonable dangerous axle and wheel assembly proximately caused the death of Trevor Baker, and thus the damages of Plaintiff, because Lone Star's axle and wheel assembly did, in natural and continuous sequence, produce or contribute substantially to the death of Trevor Baker and the associated damages of the Plaintiffs.

40. As a direct and proximate result of Defendant, Lone Star's negligence as alleged above, the Estate of TREVOR BAKER has incurred funeral and other expenses.

41. As a direct and proximate result of Defendant, Lone Star's negligence as alleged above, The ESTATE of TREVOR BAKER has sustained loss of prospective net accumulations, which were reasonably expected, but for the wrongful death.

42. BRIAN BAKER and SHALLYN BAKER, as Personal Representatives for the Estate of TREVOR BAKER and beneficiaries of the Estate of TREVOR BAKER are entitled to damages including, but not limited to:

  a. Loss of companionship and protection;

  b. Incurred funeral and other expenses;

  c. Loss of prospective net accumulations, which were reasonably expected, but for the wrongful death; and

  d. Mental pain and suffering.

WHEREFORE, Plaintiff demands judgment against Defendant, Lone Star for all damages and relief afforded by Florida law, all costs, interest, pre-judgment interest, post-judgment interest, and Plaintiff further demands trial by jury on all issues so triable.

**COUNT III**
**WRONGFUL DEATH-**
**STRICT LIABILTY FAILURE TO WARN**
**AGAINST LONE STAR**

43. Plaintiff realleges paragraphs 1-19 as if fully set forth herein.

44. Lone Star designed, manufactured, and/or remanufactured the axle and wheel assembly involved in this accident.

45. The axle and wheel assembly involved in this accident that Lone Star designed, manufactured and/or remanufactured was defective due to design defects, manufacturing or remanufacturing defects, or both.

46. Lone Star's axles and wheel assemblies, including the subject Lone Star axle and wheel assembly, were defective and unreasonably dangerous to end users and bystanders as of the time that Lone Star designed, manufactured, marketed, sold, and/or distributed the subject Lone Star axle and wheel assembly; that was defective in one or more of the following ways:

    a. Failing to warn, notice, and/or alert purchasers and users (or doing so inadequately) either before, during, and/or after the sale of the subject Lone Star axle and wheel assembly through reasonably informative and effective instructional materials, stickers, placards, and/or other documentation regarding hazardous conditions, including those described herein;

    b. Failing to instruct (or inadequately instructing) buyers, installers, inspectors, maintenance providers, contractors, and eventual owners or end users of the subject Lone Star axle and wheel assembly about proper use, operation, transportation, loading, and unloading of the same; and/or

    c.    Failing to design and manufacture the subject Lone Star axle in such a way as to restrict, limit, or prevent the possibility of burning up; even in the event of inadequate or non-existent maintenance.

47. On August 18, 2022, the subject Lone Star axle remained substantially unchanged from its condition when Lone Star axle sold the axle and wheel assembly to Champion.

48. For the reasons set forth herein, the subject Lone Star axle was unreasonably dangerous to foreseeable users and bystanders, including Plaintiff.

49. Lone Star's defective and unreasonable dangerous axle and wheel assembly proximately caused the death of Trevor Baker, and thus the damages of Plaintiff, because Lone Star's axle and wheel assembly did, in natural and continuous sequence, produce or contribute substantially to the death of Trevor Baker and the associated damages of the Plaintiffs.

50. As a direct and proximate result of Defendant, Lone Star's negligence as alleged above, the Estate of TREVOR BAKER has incurred funeral and other expenses.

51. As a direct and proximate result of Defendant, Lone Star's negligence as alleged above, The ESTATE of TREVOR BAKER has sustained loss of prospective net accumulations, which were reasonably expected, but for the wrongful death.

52. BRIAN BAKER and SHALLYN BAKER, as Personal Representatives for the Estate of TREVOR BAKER and beneficiaries of the Estate of TREVOR BAKER are entitled to damages including, but not limited to:

    a.    Loss of companionship and protection;

    b.    Incurred funeral and other expenses;

    c.    Loss of prospective net accumulations, which were reasonably expected, but for the wrongful death; and

    d.    Mental pain and suffering.

WHEREFORE, Plaintiff demands judgment against Defendant, Lone Star for all damages and relief afforded by Florida law, all costs, interest, pre-judgment interest, post-judgment interest, and Plaintiff further demands trial by jury on all issues so triable.

## COUNT IV
## WRONGFUL DEATH-
## STRICT LIABILTY DEFECTIVE DESIGN AND MANUFACTURE
## AGAINST CHAMPION

53. Plaintiff realleges paragraphs 1-19 as if fully set forth herein.

54. Champion purchased the axle and wheel assembly involved in this accident from Lone Star.

55. The axle and wheel assembly involved in this accident that Champion purchased was defective due to design defects, manufacturing or remanufacturing defects, or both.

56. Champion affixed the axle and wheel assembly onto the part of the manufactured home hauled by the Kenworth.

57. Defendant, Champion is engaged in the business of designing, manufacturing, marketing, advertising, selling, and distributing manufactured homes with these axles and wheel assemblies, including the subject Champion axle and wheel assembly.

58. Champion sold the manufactured home with the subject defective axle and wheel assembly on the market, all while knowing the subject axle and wheel assembly was reasonably likely to be used without inspection for defects and dangers by the end user.

59. End users would not and could not properly inspect the subject axle and wheel assembly for defects and dangerous conditions and that the detection of such defects and dangers would be beyond the capabilities of such persons.

60. The subject axle and wheel assembly was defective and unreasonably dangerous to end users and bystanders as of the time that Champion designed, manufactured, marketed, sold, and/or

13

distributed the subject axle and wheel assembly; at that same time, Champion knew or should have known that the subject axle and wheel assembly was defective in one or more of the following ways:

    a. Designing the subject axle and wheel assembly in such an unreasonably dangerous and defective manner as to permit the subject axle and wheel assembly to fail;

    b. Manufacturing the subject axle and wheel assembly in such an unreasonably dangerous and defective manner as to permit the subject axle and wheel assembly to fail;

    c. Selling the subject axle and wheel assembly in such an unreasonably dangerous and defective manner as to permit the subject axle and wheel assembly to fail;

    d. Making the subject axle and wheel assembly available to the general public, without adequate warning of the unreasonably dangerous and defective nature of the subject Champion axle permitting the subject Champion axle and wheel assembly to fail;

    e. Marketing, promoting, advertising, and representing to the general public that the subject axle and wheel assembly was reasonably safe for use, operation, transportation, handling, movement, loading, and unloading when—in reality—basic and reasonably foreseeable use was known or should have been known to Champion to cause the subject axle and wheel assembly to fail;

    f. Marketing, promoting, advertising, and representing to the general public that the subject axle and wheel assembly was reasonably safe for use, operation, transportation, handling, movement, loading, and unloading when—in reality—a safer alternative design was readily available and feasible, including but not limited to: using more lubrication and/or more axles to support the weight of manufactured homes;

    g. Failing to design and manufacture the subject axle and wheel assembly in such a way as to restrict, limit, or prevent the possibility of burning up; even in the event of inadequate or non-existent maintenance;

    h. Improperly assembling, inspecting, and testing the subject axle and wheel assembly—including through use of prototypes in the design

   or manufacturing stages—such that foreseeable use would not result in sudden, unexpected failure;

  i. Failing to properly design, manufacture, assemble, test, inspect, label, package, and otherwise place the subject axle and wheel assembly on the market for sale in a defect-free condition, thereby creating an unreasonable danger of injury or death to users and bystanders under normal and foreseeable circumstances;

  j. Failing to inspect, test, review, or examine the subject axle and wheel assembly (including all component parts) to ensure the subject Champion axle and wheel assembly would operate in a reasonably safe manner when the subject Champion axle and wheel assembly left Champion's possession; and/or

  k. Failing to use due care in the manufacture, design, marketing, distribution, sale, testing, or servicing of the subject axle and wheel assembly, including its component parts, in such a way to render the subject Champion axle and wheel assembly not reasonably safe for any use.

61. On August 18, 2022, the subject Champion axle remained substantially unchanged from its condition when Champion axle sold the axle and wheel assembly to Champion.

62. For the reasons set forth herein, the subject Champion axle was unreasonably dangerous to foreseeable users and bystanders, including Plaintiff.

63. This defective and unreasonable dangerous axle and wheel assembly proximately caused the death of Trevor Baker, and thus the damages of Plaintiff, because the axle and wheel assembly did, in natural and continuous sequence, produce or contribute substantially to the death of Trevor Baker and the associated damages of the Plaintiffs.

64. As a direct and proximate result of Defendant, Champion's negligence as alleged above, the Estate of TREVOR BAKER has incurred funeral and other expenses.

65. As a direct and proximate result of Defendant, Champion's negligence as alleged above, The ESTATE of TREVOR BAKER has sustained loss of prospective net accumulations, which were reasonably expected, but for the wrongful death.

66. BRIAN BAKER and SHALLYN BAKER, as Personal Representatives for the Estate of TREVOR BAKER and beneficiaries of the Estate of TREVOR BAKER are entitled to damages including, but not limited to:

    a. Loss of companionship and protection;

    b. Incurred funeral and other expenses;

    c. Loss of prospective net accumulations, which were reasonably expected, but for the wrongful death; and

    d. Mental pain and suffering.

WHEREFORE, Plaintiff demands judgment against Defendant, Champion for all damages and relief afforded by Florida law, all costs, interest, pre-judgment interest, post-judgment interest, and Plaintiff further demands trial by jury on all issues so triable.

## COUNT V
## WRONGFUL DEATH-
## STRICT LIABILTY FAILURE TO WARN
## AGAINST CHAMPION

67. Plaintiff realleges paragraphs 1-19 as if fully set forth herein.

68. Champion purchased the axle and wheel assembly involved in this accident from Lone Star.

69. The axle and wheel assembly involved in this accident that Champion purchased was defective due to design defects, manufacturing or remanufacturing defects, or both.

70. Champion affixed the axle and wheel assembly onto the part of the manufactured home hauled by the Kenworth.

71.     Defendant, Champion is engaged in the business of designing, manufacturing, marketing, advertising, selling, and distributing manufactured homes with these axles and wheel assemblies, including the subject Champion axle and wheel assembly.

72.     Champion sold the manufactured home with the subject defective axle and wheel assembly on the market, all while knowing the subject axle and wheel assembly was reasonably likely to be used without inspection for defects and dangers by the end user.

73.     End users could not properly inspect the subject axle and wheel assembly for defects and dangerous conditions and that the detection of such defects and dangers would be beyond the capabilities of such persons.

74.     The subject axle and wheel assembly, was defective and unreasonably dangerous to end users and bystanders as of the time that Champion designed, manufactured, marketed, sold, and/or distributed the subject axle and wheel assembly; at that same time, Champion knew or should have known that the subject axle and wheel assembly was defective in one or more of the following ways:

       a. Failing to warn, notice, and/or alert purchasers and users (or doing so inadequately) either before, during, and/or after the sale of the subject axle and wheel assembly through reasonably informative and effective instructional materials, stickers, placards, and/or other documentation regarding hazardous conditions, including those described herein;

       d. Failing to instruct (or inadequately instructing) buyers, installers, inspectors, maintenance providers, contractors, and eventual owners or end users of the subject axle and wheel assembly about proper use, operation, transportation, loading, and unloading of the same;

75.     On August 18, 2022, the subject axle and wheel assembly remained substantially unchanged from its condition when the axle and wheel assembly affixed the axle and wheel assembly onto its manufactured home.

17

76. For the reasons set forth herein, the subject Champion axle was unreasonably dangerous to foreseeable users and bystanders, including Plaintiff.

77. Champion's defective and unreasonable dangerous axle and wheel assembly proximately caused the death of Trevor Baker, and thus the damages of Plaintiff, because Champion's axle and wheel assembly did, in natural and continuous sequence, produce or contribute substantially to the death of Trevor Baker and the associated damages of the Plaintiffs.

78. As a direct and proximate result of Defendant, Champion's negligence as alleged above, the Estate of TREVOR BAKER has incurred funeral and other expenses.

79. As a direct and proximate result of Defendant, Champion's negligence as alleged above, The ESTATE of TREVOR BAKER has sustained loss of prospective net accumulations, which were reasonably expected, but for the wrongful death.

80. BRIAN BAKER and SHALLYN BAKER, as Personal Representatives for the Estate of TREVOR BAKER and beneficiaries of the Estate of TREVOR BAKER are entitled to damages including, but not limited to:

   a. Loss of companionship and protection;

   b. Incurred funeral and other expenses;

   c. Loss of prospective net accumulations, which were reasonably expected, but for the wrongful death; and

   d. Mental pain and suffering.

WHEREFORE, Plaintiff demands judgment against Defendant, Champion for all damages and relief afforded by Florida law, all costs, interest, pre-judgment interest, post-judgment interest, and Plaintiff further demands trial by jury on all issues so triable.

DATED this 25th day of June 2024.

                                        Respectfully submitted,

                                        ***/s/ John C. Distasio, Esq.***
                                        JOHN C. DISTASIO, Esquire
                                        Florida Bar No.: 096328
                                        STEVE RAWLS, Esquire
                                        Florida Bar No.: 938254
                                        THE FLORIDA LAW GROUP
                                        407 N. Howard Avenue, Suite 100
                                        Tampa, FL 33606
                                        Telephone: (813) 463-8880
                                        john@floridalawgroup.org
                                        ashleigh@floridalawgroup.org
                                        steverawls@floridalawgroup.org
                                        *Attorneys for Plaintiff*